Good morning your honors. Brian Pomerantz on behalf of petitioner Ernesto Mejorado. I will keep an eye on the clock but I intend to say five minutes rebuttal please. May it please the court. Ruling for the habeas petitioner in a harmless heir situation like this, the Second Circuit in Wood v. Ercole clarified that it is not for the court to decide whether it thought that it would have voted to convict. Rather the question is whether the erroneous admission of the defendant's statement had a substantial and injurious effect on the jury's decision. It was for the jury to decide the credibility of the witnesses and absent the impact of the wrongly admitted statement in that case they may very well not have seen that issue in the same light. Thus the question for this court is whether each of you think that the error of excluding Mr. Mejorado's excited utterance substantially influenced the jury's decision. Is that the question or is it that under Ayala or Davis v. Ayala that I forget the exact, isn't it just the ed but double deference we're applying here not merely straight bracked analysis but whether that analysis itself was off the map? First I'm going to say I don't think Ayala changed anything because I think that the law that was stated by the Supreme Court in the case is already the law. I'm sorry. Go ahead. I also don't think that there's double deference. Brecht subsumes EDPA so it's a higher standard, it's a harder standard than EDPA. I don't think there's really a double deference situation. If you comply with Brecht you've beaten EDPA but nonetheless I believe that the facts in this case overcome EDPA even on the basis that the Supreme Court said that. And then the Supreme Court said no, you still have to give EDPA deference to its Chapman determination. And so as I read Ayala v. Davis, the Supreme Court said by subsume we mean you have to meet both tests. And so we would have to say that the state court's determination that any error was harmless beyond a reasonable doubt under unreasonable application of Chapman. So assuming that that's what the Supreme Court said in Ayala v. Davis, how does that apply here? The California Court of Appeals decision was unreasonable under Chapman. I believe your Honor's correct. That is exactly what you need to look at. Even though we're under Brecht for habeas, Chapman is what the California Court of Appeal was looking at and that's the standard that has to be unreasonable for us to prevail. We'd have to say that no reasonable jurist could think that the error here, which was excluding Aiden's testimony, was harmless beyond a reasonable doubt. So explain how we would find that here or hold that here. There's a number of ways you can find that, your Honor. The three most common ways that courts assess prejudice are how long was the jury out. In this case, they were out a very long time. In fact, on some counts, they never resolved the issue. The second way is, and these aren't in necessarily order of importance, did the jurors indicate that the evidence in question concerned them? Yes, they did. They asked for multiple readbacks. They asked for readbacks, then they asked for transcripts from Adon and David. There were some 60 witnesses in this case. The only two that really mattered were Adon and David. That's stated by the prosecutor over and over again in his closing. So I think we can all agree that those two witnesses were the key witnesses and those are the two witnesses that are before this court and what happened with them. Those are the readbacks that they were requesting, transcripts they were requesting were those two witnesses. Did the court, did the prosecution capitalize on the error? Courts look all the time, did the prosecution capitalize on the error? In this case, after the court improperly excluded Mr. Maharado's exculpatory statement to Adon, the prosecutor repeatedly used that to his benefit. In fact, he said during closing, multiple times he used the knowledge that he had of the statement that was excluded, he argued how the importance of that statement had it been said but it wasn't said. On 5853, he says David Lopez, he's on the stand, he says Ernesto comes banging on the door, we just killed somebody. We just killed somebody. He didn't say I just killed somebody. Doesn't say Nidal just killed somebody. He says we because they're a team, they're in that together, they did it. Well actually, Adon says his wife killed somebody. So the prosecutor is taking the exact statement that's been excluded, that's been wrongfully excluded, and saying if that was said, that would make a difference here. So the California Supreme Court gave three reasons for why it thought it was harmless. And one of them in fact was that Adon's testimony was cumulative because Adon testified later in the trial that Ramirez said he had killed Flores. And there were a couple of other reasons as well. Overwhelming evidence of Inhorado's guilt and that Adon's testimony was untrustworthy due to his bias. So we'd have to find that those reasons were either unreasonable or that the the reasons that you indicate so overwhelmed them that no reasonable juror, jurist, no reasonable appellate court could have agreed with the California Supreme Court. So maybe you could address the reasons that the Supreme Court gave. I think the California Supreme Court of Appeals. Both those are there, but I think a third thing's also there. They mistook the facts. They mistook the facts in this case. So we have not only D1, we have D2 in this case because they mistook the facts. They talk about facts that David supposedly testified to, they never testified to. Adon did. So if Adon's the untrustworthy one, then how are those facts the overwhelming evidence against my client? Adon's the one who says he was with the murder. David, very specifically, when led down the path by the prosecutor, says, no, I never saw them together. The prosecutor says, yes, you did. He says, no, I didn't. But the California Court of Appeals says, well, it wouldn't have mattered because we have a situation where, you know, he would have been aiding and abetting anyhow because he was with Night Owl on the on the night of the crime. Where are they getting that? That's not in the record that they're signing. It's in stuff that's coming from Adon. But how about the comment that Adon apparently made, at least the California Court of Appeals found that, that in fact Ramirez told him he committed the murder? I think the problem with that, Your Honor. Did he say that? Or are you saying that they made a mistake? No, no, no. He said that he said that Ramirez said he committed the murder. But Ramirez is the co-defendant, right? If Ramirez, if that's believed by by the jury, then, you know, my my my client doesn't isn't where he is now. What the state has said here is it doesn't, you know, they didn't believe him. They didn't believe him because otherwise Ramirez would not have walked on Mr. Flores's murder. You know what I find interesting about your argument is that you suggest this is sort of a black and white. That if in fact Adon's testimony that Night Owl killed somebody was introduced, that would be clearly an exculpatory statement. But in fact, of course, that's not. Theoretically, if the are involved in the commission of a felony, they're both responsible for the murder. And so therefore, any exculpatory statement that's made by Adon, or at least that could be used to exculpate the petitioner here, is confused because it isn't necessarily a black and white situation, is it? I'm a polar thinker, so I tend to come across that way. What kind of thinker? A polar thinker. Polar. But it is not a black and white situation. The thing here that I think courts keep jumping to is, well, even if he said it, then he's an accessory, he's aiding and abetting. But that's not the statement. The statement isn't, Night Owl just killed somebody, and I was there with him, and I saw him do it. It's Night Owl just killed somebody. We don't know from that statement at what point Mr. Meherado learned that. Now that's something that could have been explored during trial, had they let Mr. Lopez, Adon Lopez, testify to what he knew. But we don't know the facts around that because the court wrongfully excluded that. So we have no idea how he came to know that and whether he was there with him. There's no evidence that he was there with him. If there was evidence that he was there with him, theoretically, how could Mr. Ramirez not have been found guilty for Mr. Flores' murder? He'd have to be in the same situation of aiding and abetting, and yet the jury acquitted him on count number three. Oh, I didn't think they acquitted him. I thought it was a hung jury. I mean, you're right. You're right. They did not resolve count number three. So he was not convicted on that. He was convicted on other things, but not that. I'm getting close to my rebuttal time. I don't know whether you guys wanna start. If you have no further questions, I'll just reserve the rest. That's fine. Thank you. We'll hear from the government. Good morning, Your Honor. Deputy Attorney General Tom Shea on behalf of respondent. May it please the court. I would just like to do two main things. First is to talk quickly about Ayala, and then to address some of the harmless error arguments that Petitioner made in his reply brief that I didn't get a chance to respond to. First, in Ayala, the Supreme Court did hold that a state court's Chapman analysis is a state court's Chapman analysis is subject to that highly deferential standard. And second here, the California Court of Appeals Chapman analysis was reasonable, and Petitioner's arguments don't demonstrate that it was unreasonable. The language used by the Supreme Court in describing it is, essentially in this court, is if a fair minded jurist could agree with the California Court of Appeals Chapman analysis, then habeas relief is barred by 2254D. And I'd just like quickly to address Petitioner's arguments here. First, Petitioner argued, points out the length of the deliberations, but here the jury wasn't... There's no indication that the jury is just struggling with Petitioner's guilt as count three. In addition to Petitioner's guilt, there's a co defendant, Robert Borjas, who was tried for the murders of the two women. There was also co defendant Ramirez. So there's three defendants, there's multiple counts, there's two sets of crimes, there's multiple allegations, including gun, gang allegations, and also special circumstance allegations. And more than that, as noted by this court, there were... Ramirez was not convicted, the jury hung as to him as to count three. As to the other defendant, Borjas, the jury also hung as to him. And so I think the length of the deliberations here, it's actually more consistent with the jury struggling with the guilt of co defendants, not defendant himself. And in any event, the test is reasonableness and the length of the deliberations here simply don't show that the California Court of Appeals decision was not reasonable. Another point that Petitioner makes, he argued that the Court of Appeals mistook the facts, but essentially Petitioner's asking this court to re argue and reconsider the facts. There's a presumption of correctness, both under the Chapman test and under AEDPA, there's a presumption of correctness to the state court's factual findings. And in the Court of Appeals opinion, the Court of Appeal specifically said, in describing David's testimony, that David testified that both Ramirez and Petitioner were there at the time of the knock. And that's the central fact that Petitioner's arguing that the court mistook. But... And I'd also point out at pages 3,775 to 76, and also pages 3,779 to 80, in both of those spots, David clearly testifies that Petitioner and Ramirez were both there. The two other ones that I wanted to note was, he's also... He also talked about the jury request for readbacks and transcripts, and I think the point I was making earlier applies here as well. The fact that here, the juror deliberations, it was more consistent with them struggling with the guilt of co-defendants rather than Petitioner himself. And then, finally, he's arguing that the prosecutor somehow capitalized on this error, but there's nothing wrong. The prosecutor did nothing wrong. He's simply arguing based on the evidence that was presented at trial, and he's making arguments based on that. The prosecutor did nothing wrong in that regard. And in any event, as to all these arguments, again, the test is whether the California Court of Appeals Chapman analysis was reasonable. And for the reasons stated forth and set forth by the California Court of Appeal, primarily, the one I wanna emphasize is that the California Court of Appeals said that this... Excuse me, that this evidence was essentially cumulative. And let me finish up with this point. And here, the excluded evidence was Petitioner blaming someone else, co-defendant Ramirez, for the Flores murder. And that same evidence came in through Aiden and David. Both Aiden and David testified that Ramirez himself told them that Ramirez said, I killed Flores. David says that Ramirez bragged about it, and Aiden says that Ramirez said that he shot Flores in the back of the head. And so, I think that the evidence was... The excluded evidence, similar evidence, was presented at trial. And I think that's... For that reason and the other reasons stated by the California Court of Appeals analysis, the state court's Chapman analysis simply was reasonable. And on that basis, I would urge this court to affirm the district court's denial of habeas relief. Alright, thank you. Thank you, Your Honor. You have time for rebuttal. Sorry, I was trying to find the section where he says, Nite Owl was not there. I couldn't find it in the limited time I had. I'm not saying that the prosecutor argued something improperly. I'm not saying that he was unethical or something like... Of that sort. What I'm saying is that the evidence he argued was incorrect. Now, he had a right to argue the evidence that was in front of the court, but it was incorrect. He knew that there were statements out there to the contrary. And he didn't just go as far as to say, he says we killed somebody. He specifically says multiple times, he doesn't say Nite Owl doesn't kill somebody. I read one to you, here's another one. Excuse me. He says it numerous times, he says that Nite Owl just killed somebody. He also says... Here it is. We just killed somebody, that's exactly what it is. We just killed somebody, not I, not Frank, we. Now, why does he keep stressing that? Why does he keep stressing what he didn't say? He keeps stressing it because of the importance of what if he'd said that? And in fact, Mr. Peter's counsel from Mr. Maharado, during one of the breaks in closing, says, Your Honor, time out, I have a problem here. This is really unfair. You kept this out, fine, I've objected. But this is really unfair because he's highlighting the importance of the statement that he knows Adan would testify to, and that was kept out. And the judge says, what Mr. Shah is saying, which is, well, he's just arguing the evidence. Right, he is arguing the evidence, but you're also making a statement to the jury that this would be an important statement. This isn't me, the sketchy, habeas counsel, Brian Pomerantz, saying it. It's Frank Santoro, the prosecutor in this case. He's telling the jury, this is important. It's important that he did not say this. So when this court is looking at his statements, his actions, and how much he relied on it, as far as the length of the deliberation, at best, they were out a week on this. There was, on the seventh day of deliberation, and as are in the papers, the deliberations here were broken up because of vacations and illness and all kinds of things. So the 14 days of deliberations actually took a month. They were out a really long time. But it's not till the seventh day of deliberation, not the seventh calendar day, the seventh day of deliberation that they first pass a note to the court that says, we've reached a conclusion on some of these counts. So at best, at best, even if they're struggling with Mr. Borjas and Mr. Ramirez, and they were struggling with everyone, that's admitted, at best, it took them seven days to come back on this. Under the case law, that's still an extremely long time. That is still indicative to this court of a jury that was in equipoise, a jury that was having a tough time making a call. And I think to say, well, this wouldn't have made a difference, I don't know how we can say that in a situation where they're having that tough a time. The only exculpatory evidence for my client, the California Court of Appeals says that. They say, this is a tough one. This is a tough one because we have Mr. Ramirez's right under Bruton versus the only exculpatory evidence for Mr. Meharada. Well, first off, he didn't have a Bruton right. He didn't have a Bruton right. So they shouldn't have been weighing that because there was no Bruton right. That's why we threw out... The first thing I did in the AOB is I threw out the Confrontation Clause claim and said to the court, this isn't a valid claim, right? He said it to his uncle. This isn't the Confrontation Clause issue. Well, it's also not a Bruton issue for the same reason. So they're weighing something that they shouldn't be weighing. They're mistaking the law on that. But in that situation, they're stressing, the California Court of Appeal is stressing the importance and the significance of the exculpatory evidence, that this was a big statement. The fact that the Second Circuit, Judge Friendly in United States versus DeMaria said, we cannot but wonder why if the statement was so insignificant as the government now claims the prosecutor was at such pains to have it excluded. Why did he want it excluded so badly if it's no big deal? If this was so cumulative, if they had Mr. Meherado dead to rights, then why did this get revisited time and time and time again until it was out? There was four rulings from the court on this. In fact, there was four rulings from the court that this was an excited utterance. Four times, the court said this was an excited utterance. Which, as a respondent said in his papers, this court's bound by that. We can't argue whether it's an excited utterance or not because the state court decided that under state law. The exculpatory statement to Adam went to the heart of the case. Did Mr. Meherado participate in Mr. Flores' murder? And that was kept away from the jury. Finally, under the Brecht test, it comes down to a simple question. If you're sitting there right now with grave doubt as to whether these issues could have affected the outcome, Mr. Meherado went. That's the test for this court. Could it have affected the outcome? If you have doubts on that, he went. If you have no further questions, I'm done. Thank you. Thank you, counsel. Alright, the case of Meherado v. Hedgepeth is submitted.
judges: Sessions, Ikuta, Owens